IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| NATHANIEL JOHNSON, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 3:05-cv-140-WDS |
| | ) | |
| T. J. COLLINS, et al., | ) | |
| | ) | |
| Defendants. | ) | |

**REPORT AND RECOMMENDATION**

This matter has been referred to United States Magistrate Judge Donald G. Wilkerson by Senior United States District Judge William D. Stiehl pursuant to 28 U.S.C. § 636(b)(1)(B), Federal Rule of Civil Procedure 72(b), and Local Rule 72.1(a) for a Report and Recommendation on the Motion for a Summary Judgment (Doc. 19), filed by Defendants on December 15, 2006. For the reasons set forth below, it is **RECOMMENDED** that the motion be **GRANTED IN PART and DENIED IN PART,** and that the Court adopt the following findings of fact and conclusions of law:

**FINDINGS OF FACT**

Plaintiff Nathaniel Johnson ("Plaintiff") alleges that while he was detained in the St. Clair County Jail in Belleville, Illinois, defendants failed to protect him from an attack by another inmate named Rafael Jackson. On April 19, 2004, Officer Gray reported that "detainee Johnson expressed to me that detainee Raphael Jackson had threatened to kill him if he didn't give him some money." (Doc. 22-2, pg. 7). Gray further reported, "Detainee Johnson said that he was sitting in his cell reading when detainee Jackson placed a sharp weapon to his neck and demanded money or he would kill him." (Doc. 22-2, pg. 7). A Keep Separate Report printout, dated June 4, 2004, shows that on April 20, 2004, it was ordered that "Rafeal A. Jackson" was to

be kept separate from Plaintiff. (Doc. 1, Pg. 8). The report also indicated that three other individuals were also to be kept separate from Raphael Jackson (Doc. 1, Pg. 8). Plaintiff asserts that this order was made after Raphael Jackson stated in front of a jailer that he would kill Plaintiff (Doc. 11, pg. 3).

On May 1, 2004, Officer Davis reported that following a disruption in Plaintiff's cell block, he was passed a note by an inmate which stated that another inmate was trying to get Plaintiff taken out of the block so that detainee Rafael Jackson could get back in the block. (Doc. 22-2 at 5). The report then stated, "Detainees Nathanial Johnson and Rafael Jackson are to be kept separates." A note report made later that day by Officer Davis noted that Lieutenant Ray, Sergeant Cunningham, and Captain Knapp were notified of the incident.

On or about June 6, 2004,[1] Plaintiff was taken by Defendant Pea to the female visiting room. While en route, Plaintiff asserts that he noticed that Raphael Jackson was entering the room ahead of him, and immediately told Defendant Pea that he and Jackson "got a keep separate against us." (Doc 19-2 at 3). According to Plaintiff, Defendant Pea responded that he'd look into it but then left and did not return (Doc. 19-2 at 2). Defendant Pea, however, asserts only that prior to Plaintiff's altercation with Jackson, he was "unaware of the 'keep separate' order created April 19, 2004." (Doc. 19-3). Plaintiff then entered the same visiting room with Jackson. A short time later, Jackson brutally attacked Plaintiff, stabbing him in the head and hand and causing a back injury. Plaintiff was taken to an outside hospital where he received medical treatment, including stitches.

---

[1] The Jail Incidents Narratives Reports all state that the incident took place on June 6, 2004. Defendants, however, assert in their Motion for Summary Judgment (Doc. 19) that the date was June 5, 2004. Defendants' accompanied their Motion for Summary Judgment (Doc. 19) with Affidavits by each of the defendants in this matter, and each of these affidavits appear to have originally stated June 6, 2004, but were later changed by pen to state June 5, 2004.

After the incident, Plaintiff asserts that he told Defendants Cole and Johnson that he wanted to lodge a formal complaint, but they told him to "drop the whole matter" or he would "end up" on the same block with Jackson (Doc. 11 at 4). Plaintiff states that he then filed a written grievance with Defendant Collins, but never received a response (Doc. 11 at 4). Plaintiff asserts that all of the defendants allowed Jackson to "commit one assault after another" without taking any steps to stop him (Doc. 1 at 5). Plaintiff states that as a result of the assault, he suffered from numerous stab wounds (requiring stitches), lower back problems, headaches, cold sweats, anxiety, and mental anguish.

Plaintiff commenced this action on February 25, 2005, asserting that each of the Defendants (1) failed to protect Plaintiff, and (2) impermissibly retaliated against Plaintiff for complaining about the failure to protect Plaintiff from Jackson and for asserting Plaintiff's desire to press charges against Jackson by threatening to put Plaintiff back on the same block with Jackson.

Defendants filed the instant Motion for Summary Judgment and assert that the undisputed facts show that Plaintiff cannot meet any of the elements of deliberate indifference to Plaintiff's need of protection from Jackson. Defendants also assert that summary judgment is appropriate on the retaliation claim because the defendants made no threats to retaliate against Plaintiff if he were to pursue formal charges against Jackson, and that even if threats were made, such threats, without a retaliatory component, are insufficient grounds for relief under 42 U.S.C. § 1983.

## CONCLUSIONS OF LAW

Pursuant to Federal Rule of Civil Procedure 56(c), summary judgment is proper only if it is demonstrated "that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Haefling v. United Parcel Service, Inc., 169 F.3d

494, 497 (7th Cir. 1999); Dempsey v. Atchison, Topeka and Santa Fe Railway Company, 16 F.3d 832, 836 (7th Cir. 1994).  The burden is upon the moving party to establish that no material facts are in genuine dispute, and any doubt as to the existence of a genuine issue must be resolved against the moving party.  Adickes v. S.H. Kress & Co., 398 U.S. 144, 160 (1970); Miller v. Borden, Inc., 168 F.3d 308, 312 (7th Cir. 1999).  A fact is material if it is outcome determinative under applicable law.  Hardin v. S.C. Johnson & Son, Inc., 167 F.3d 340, 344 (7th Cir. 1999); Smith v. Severn, 29 F.3d 419, 427 (7th Cir. 1997); Estate of Stevens v. City of Green Bay, 105 F.3d 1169, 1173 (7th Cir. 1997).  Even if the facts are not in dispute, summary judgment is inappropriate when the information before the court reveals a good faith dispute as to inferences to be drawn from those facts.  Plair v. E.J. Brach & Sons, Incorporated,105 F.3d 343, 346 (7th Cir. 1997); Lawshe v. Simpson, 16 F.3d 1475, 1478 (7th Cir. 1994); Dempsey, 16 F.3d at 836.  Finally, summary judgment "will not be defeated simply because motive or intent are involved."  Roger v. Yellow Freight Systems, Inc., 21 F.3d 146, 148 (7th Cir. 1994).  See also, Miller,168 F.3d at 312; Plair, 105 F.3d at 347; Hong v. Children's Memorial Hospital, 993 F.2d 1257, 1261 (7th Cir. 1993); Lac Du Flambeau Indians v. Stop Treaty Abuse-Wisconsin, Inc., 991 F.2d 1249, 1258 (7th Cir. 1993).

In deciding a motion for summary judgment, the trial court must determine whether the evidence presented by the party opposed to the summary judgment is such that a reasonable jury might find in favor of that party after a trial.

> The inquiry performed is the threshold inquiry of determining whether there is the need for a trial--whether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party.
>
> [T]his standard mirrors the standard for a directed verdict under Federal Rule of Civil Procedure 50(a), which is that the trial judge

>must direct a verdict if, under the governing law, there can be but one reasonable conclusion as to the verdict.

Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250 (1986).  See also, Celotex Corporation v. Catrett, 477 U.S. 317, 322-23 (1986); Haefling, 169 F.3d at 497-98; Sybron Transition Corporation v. Security Insurance Company of Hartford, 107 F.3d 1250, 1255 (7th Cir. 1997); Weinberger v. State of Wisconsin, 105 F.3d 1182, 1188 (7th Cir. 1997).

**I.      Failure to Protect Claim**

Plaintiff alleges that Defendants were deliberately indifferent to Plaintiff's need for protection from Jackson.  In Farmer v. Brennan, 511 U.S. 825 (1994), the Supreme Court held that "prison officials have a duty ... to protect prisoners from violence at the hands of other prisoners." Id. at 833 (internal citations omitted); see also Luttrell v. Nickel, 129 F.3d 933, 935 (7th Cir. 1997).  However, not every harm caused by another inmate translates into constitutional liability for the corrections officers responsible for the prisoner's safety. Farmer, 511 U.S. at 834.

In order for a plaintiff to succeed on a claim for failure to protect, he must show that he is incarcerated under conditions posing a substantial risk of serious harm, and that the defendants acted with "deliberate indifference" to that danger. Id.; Reed v. McBride, 178 F.3d 849, 852 (7th Cir. 1999).  A plaintiff also must prove that prison officials were aware of a specific, impending, and substantial threat to his safety, often by showing that he complained to prison officials about a specific threat to his safety. Pope v. Shafer, 86 F.3d 90, 92 (7th Cir. 1996).  In other words, Defendants had to know that there was a substantial risk that those who attacked Plaintiff would do so, yet failed to take any action. Sanville v. McCaughtry, 266 F.3d 724, 733-34 (7th Cir. 2001).  In addition, a plaintiff may only bring a § 1983 claim against those individuals personally responsible for the alleged constitutional depravation. Doyle v. Camelot Care Centers, Inc., 305 F.3d 603, 614 (7th Cir. 2002).  A defendant "will be deemed to have sufficient personal

responsibility if he directed the conduct causing the constitutional violation, or if it occurred with his knowledge or consent." Chavez v. Ill. State Police, 251 F.3d 612, 652 (7th Cir. 2001).

### A. Defendants Cole, Johnson, and Collins

Defendants assert first that officers T.J. Collins, B.J. Cole, and Steven Johnson cannot be held liable as a matter of law because the undisputed facts show that none of them had any involvement with regard to Plaintiff's entry into the visiting room immediately prior to the attack by Jackson. Plaintiff's response is that these defendants had to have been aware of previous disruptions of violence from Jackson against Plaintiff in their day to day management of the St. Clair County Jail (Doc. 22 at 4).

Plaintiff has failed to allege that Defendants Collins, Cole, or Johnson directed Defendant Pea to take Plaintiff into the waiting room that was also occupied by Rafael Jackson. While Plaintiff has alleged that these Defendants were aware of the separation order prior to the attack by Jackson, Plaintiff has failed to allege that these defendants were aware that Defendant Pea was taking Plaintiff into the same room as Jackson. Without such a factual allegation, it cannot be said that Defendants Collins, Cole, or Johnson had the requisite personal involvement such that they are amenable to suit under § 1983 for failing to protect Plaintiff from the attack by Jackson. Therefore, it is **RECOMMENDED** that summary judgment be **GRANTED** in favor of Defendants Collins, Cole, and Johnson as to Plaintiff's failure to protect claim.

### B. Defendant Pea

Defendant Pea asserts that summary judgment should be granted in his favor because (1) Plaintiff cannot establish that he was incarcerated under conditions posing a substantial risk of serious harm, and (2) Plaintiff cannot establish that Defendant Pea was aware of a specific, impending, and substantial threat to Plaintiff's safety.

For Plaintiff to succeed on his failure to protect claim, he must show that he was incarcerated under conditions posing a substantial risk of serious harm, and that the defendant acted with "deliberate indifference" to that danger. Reed, 178 F.3d at 852. Defendants argue that it has not been established by Plaintiff that he was incarcerated under conditions posing a substantial risk of serious harm. As further evidence of this assertion, Defendants allege that Plaintiff himself did not think Jackson would attack him and that Plaintiff could have decided not to enter the waiting room. Plaintiff responds that Jackson had stabbed him on one prior occasion and also threatened to kill Plaintiff in the presence of other guards such that a separation order was entered to protect him.

While it is undisputed that Plaintiff did not think Jackson would attack him if he entered the waiting room, the Court does not believe this to be an admission by Plaintiff that a substantial risk of harm did not exist at the time Defendant Pea escorted Plaintiff to the waiting room. Any doubt as to the existence of a genuine issue must be resolved against the moving party. Adickes, 398 U.S. at 160. Here, Defendant's evidence does not foreclose the possibility that there was a substantial risk to Plaintiff's safety because such a risk does not depend upon what Plaintiff subjectively thought at the time. A reasonable jury could conclude that, given the prior altercation and threats from Jackson, along with the issuance of the separation order, there existed a substantial risk of harm at the time Plaintiff entered the waiting room.

Defendants' second argument for granting summary judgment in Defendant Pea's favor must also fail. Deliberate indifference exists where a state official "know[s] of and disregard[s] an excessive risk to inmate health or safety." Dunigan ex rel. Nyman v. Winnebago County, 165 F.3d 587, 591 (7th Cir. 1999) (citation omitted). There is conflicting testimony regarding exactly what was said prior to Plaintiff entering the waiting room after Jackson. According to Plaintiff,

7

upon noticing that Jackson was entering the room ahead of him, he told Defendant Pea that he and Jackson "got a keep separate against us." (Doc. 19-2 at 3). Plaintiff also asserts that Defendant Pea responded that he would look into it, but then left and did not return (Doc. 19-2 at 3). Defendant Pea, however, asserts only that prior to Plaintiff's altercation with Jackson, he was "unaware of the 'keep separate' order created April 19, 2004." (Doc. 19-3). Defendants also argue that even if Plaintiff did advise Defendant Pea of the keep separate order, that this fact in itself would not put Defendant Pea on notice of a substantial risk of harm to Plaintiff. Whether Defendant Pea was on notice of a substantial risk of harm is a factual question best left to the province of the jury. The Court cannot conclude, based on the record before it, that a reasonable jury could not find that Defendant Pea was put on notice of a substantial risk of harm and then chose to disregard that risk.

The Court **RECOMMENDS** that the summary judgment be **DENIED** as to Defendant Pea on Plaintiff's failure to protect claim.

## II.     Retaliation Claim

Plaintiff asserts Defendant's Cole and Johnson unconstitutionally retaliated against him after he informed them of his intent to file formal charges against Jackson. He asserts that after informing them of his intent, they threatened to put him in the same cell block as Jackson if he did not "drop the whole matter." (Doc. 11 at 4). Plaintiff also asserts that Defendant Collins ignored the written complaint he submitted in retaliation for filing his complaint. Defendants deny ever making any threats of retaliation.

### A.     Defendants Cole and Johnson

Defendants assert that Plaintiff's retaliation claim must fail as a matter of law because Plaintiff's complaint and amended complaint allege only <u>threats</u> of retaliation on the part of

Defendants Cole and Johnson if Plaintiff were to file formal charges against Jackson. Defendants cite DeWalt v. Carter, 224 F.3d 607 (7th Cir. 2000), for the apparent proposition that threats alone cannot be considered retaliation under 42 U.S.C. § 1983. This is simply an incorrect statement of the law, and DeWalt is readily distinguishable from this case, as are all of the non-binding cases cited by the Defendants.

In DeWalt, the plaintiff, an inmate, filed a grievance after one of the prison guards made a series of sexually suggestive and racially derogatory comments to him regarding certain female teachers at the prison school. 224 F.3d at 609. It was the filing of the grievance that led to alleged retaliation on the part of prison personnel. The Seventh Circuit held that racially derogatory and sexually explicit language "while unprofessional and deplorable, does not violate the Constitution." Id. at 612. The court explained, "Standing alone, simple verbal harassment does not constitute cruel and unusual punishment, deprive a prisoner of a protected liberty interest, or deny a prisoner equal protection of the laws." Id. (emphasis added). The DeWalt decision did not hold that threats cannot be retaliatory. In fact, there were no threats at issue in DeWalt, simply derogatory statements. DeWalt merely held that sexually explicit and racially derogatory language, by itself, did not violate the Constitution. The court did find, however, that the plaintiff did state a claim for retaliation for events that took place as a result of the plaintiff's filing of the grievance that complained about the derogatory comments.

In this case, unlike DeWalt, Plaintiff asserts that Defendants Cole and Johnson made threats to retaliate physically against Plaintiff for the exercised of his constitutionally protected right, which was to make grievances and access the courts. Threats are an entirely different matter than insults, or verbally explicit remarks. Plaintiff is asserting more than mere derogatory comments, he is asserting that he was threatened with physical harm.

9

The most relevant distinction is that in this case, unlike in DeWalt, the allegation is not that the verbal abuse, standing alone, was a constitutional violation actionable under § 1983. It is the fact that the alleged abuse took place in retaliation of exercise or threatened exercise of a constitutionally protected right. None of the cases cited by Defendants stand for the proposition that threats of physical harm made in retaliation for the exercise or threatened exercise of a constitutionally protected right are not actionable under § 1983.

There exists a genuine dispute as to a material fact – whether Defendant's Cole and Johnson threatened to put Plaintiff in the same cell block with Jackson – such that summary judgment is not warranted. Accordingly, it is **RECOMMENDED** that summary judgment be **DENIED** as to Defendants Cole and Johnson on Plaintiff's retaliation claim.

    **B.**    **Defendants Collins and Pea**

The Court's March 22, 2006 Memorandum and Order states that "Plaintiff may proceed against all defendants on his failure-to-protect and retaliation claims." (Doc. 7 at 4). The Motion for Summary Judgment does not address Defendant Collins or Defendant Pea with respect to the retaliation claim; there was no stated basis for why these two defendants are entitled to judgment as a matter of law. It would be imprudent for the Court to make an argument for Defendants where they failed to make it themselves because to do so would deprive Plaintiff of the opportunity to respond. It is therefore **RECOMMENDED** that summary judgment be **DENIED** as to Defendants Collins and Pea on Plaintiff's retaliation claim.

CONCLUSION

Therefore, for the reasons set forth above, it is **RECOMMENDED** that the Motion for Summary Judgment (Doc. 19) be **DENIED IN PART and GRANTED IN PART.** Specifically, it is **RECOMMENDED** that summary judgment be **GRANTED** as to Defendants Cole,

Johnson, and Collins on the failure to protect claim, **DENIED** as to Defendant Pea on the failure to protect claim, **DENIED** as to all defendants on the retaliation claim, and that the Court adopt the foregoing findings of fact and conclusions of law.

Pursuant to 28 U.S.C. § 636(b)(1) and Local Rule 73.1(b), the parties shall have ten (10) days after service of this Recommendation to file written objections thereto.  The failure to file a timely objection may result in the waiver of the right to challenge this Recommendation before either the District Court or the Court of Appeals. Snyder v. Nolen, 380 F.3d 279, 284 (7th Cir. 2004); United States v. Hernandez-Rivas, 348 F.3d 595, 598 (7th Cir. 2003).

**DATED: August 6, 2007**

*s/ Donald G. Wilkerson*
**DONALD G. WILKERSON**
**United States Magistrate Judge**

11